# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | |
| | : | |
| **Plaintiff,** | : | **Crim. No. 11-cr-133** |
| | : | |
| **-v-** | : | |
| | : | |
| **MOHAMED ALESSA,** | : | |
| | : | |
| **UNITED STATES OF AMERICA,** | : | |
| | : | |
| **Plaintiff** | : | **Crim No. 11-cr-132** |
| | : | |
| **-v-** | : | |
| | : | |
| **CARLOS E. ALMONTE,** | : | **OPINION** |
| | : | |

TO:  Paul J. Fishman, United States Attorney
     United States Attorney's Office
     970 Broad Street
     Newark, New Jersey 07102

     By:  L. Judson Welle, Asst. U.S. Attorney
          Andrew D. Kogan, Asst. U.S. Attorney
          U.S. Attorney's Office
          970 Broad Street
          Newark, New Jersey 07102

     Stanley L. Cohen, Esq.
     119 Avenue D, Fifth Floor
     New York, New York 10009
     Attorney for Movant Mohamed Alessa

     James C. Patton, Esq.
     209 So. Livingston Avenue, Suite 9
     Livingston, New Jersey 07039
     Attorney for Movant Carlos E. Almonte

Defendants, Mohamed Alessa and Carlos Almonte pled guilty to a conspiracy to engage in acts of terrorism in a foreign country, specifically Somalia. On April 15, 2013 a lengthy sentencing hearing was held. At the conclusion the Court, granting variances from the Guidelines, sentenced Alessa to 22 years imprisonment and Almonte to 20 years imprisonment, each with lifetime supervised release. On April 29, 2013, the Defendants filed a motion seeking an Order:

1. Pursuant to Local Rule 7.1(I) of the Federal Rules of Criminal Procedure, and the Court's inherent authority, to reconsider the sentences previously imposed upon the co-Defendants; and

2. Following such reconsideration, to order a new sentencing hearing; or

3. For a hearing upon the instant application.

The reasons for the motion were:

1) the Government had learned during the sentencing hearing about the Boston Marathon bombing;

2) the Government reshaped its closing argument to include as a basis for a lengthy sentence the danger Defendants posed to the New York metropolitan area;

3) the Court learned of the Boston bombings before imposing the sentence; and

4) Defendants were unaware of the Boston bombings.

Under the circumstances described below, the Boston bombing did not and could not have affected the Defendants' sentence, and Defendants' motion will be denied.

The sentencing hearing was the culmination of a lengthy process during which the

Defendants and the Government submitted to the Court thousands of pages of sentencing memoranda, expert reports and other material urging, in the case of the Government, that the lowest Guideline sentence of 30 years be imposed and, in the case of each Defendant, that, as a variance from the Guidelines, a sentence of 15 years be imposed. For many weeks, the Court reviewed with care the material thus provided and reached tentative conclusions, subject to any additional considerations presented at the sentencing hearing. The Court prepared a 43 page preliminary Statement of Reasons for granting a variance, albeit not for the 15 years that Defendants sought.

The sentencing hearing commenced on the morning of April 15. The Defendants and the Government submitted into the record the voluminous material which they had previously furnished to the Court. During the morning session, counsel for Mr. Alessa presented his argument and Mr. Alessa addressed the Court. Then counsel for Mr. Almonte presented his argument and Mr. Almonte addressed the Court. The arguments of counsel contained the points expressed at much greater length in the previously submitted written material. At approximately 12:30, a lunch recess was taken, after which AUSA Welle argued for the Government.

Defendants Memorandum in support of their motion was prepared without the benefit of a transcript and was based upon counsel's recollection of the trial events. Their recollection was faulty in part. They noted that the bombings in Boston occurred at approximately 2:50 p.m.. The Memorandum recited that "the federal agent [attending the sentencing hearing] was observed reading his smartphone at approximately 3:00 p.m., then writing a note which he handed forward to the prosecutor seated at the table - - Mr. Welle proceeded to read the note, before walking up to hand it - mid-sentence - to AUSA Kogan at the lectern."

3

It was the Defendants' contention that AUSA Kogan had proposed to discuss "the characteristics" of the Defendants, but that upon the receipt of the note, "the purpose and reasoning of the Government's argument abruptly shifted. From that point on, Mr. Kogan ceased speaking of the 'characteristics' of the Defendants, and instead began to describe in specific terms the vulnerability of the American environment to terrorists - - argued that any sentence to be imposed must deter others from carrying out domestic attacks against citizens in Newark and elsewhere." (Defense Memo at 2, 3).

The actual events, as revealed by the transcript, occurred somewhat differently. AUSA Welle, the first person to argue for the Government sought to rebut the defense contention that Defendants were not truly dangerous conspirators and were affected by an extreme case of adolescent angst. As shown at page 113 of the transcript, USA Welle, who had proposed to address the § 3553(a) factors, moved on to the subject of deterrence. Before news of the Boston bombings was received, he described the dangers that terrorists pose to the people and facilities in the New York metropolitan area, citing examples and using language that defense counsel attribute to AUSA Kogan. AUSA Welle concluded, stating "At this point, your Honor, I'd like to ask Mr. Kogan to come up and talk a little bit about the individual characteristics of the defendants." (Transcript at 116, lines 21-23). After a short recess, AUSA Kogan proceeded.

AUSA Kogan stated that he would talk about the characteristics of the Defendants. He commenced by arguing that Mr. Alessa's contentions evidenced a failure to accept responsibility and a denial of the conspiracy and the overt acts to which he had pled guilty and admitted. AUSA Kogan then turned to the mental condition of the two Defendants and the fact that the experts found them to be liars and manipulators. He noted that both the Government experts

4

diagnosed them as having anti-social personality disorder and were a continuing risk of violence. AUSA Kogan challenged the opinions of the defense experts.

During AUSA Kogan's argument, a Special Agent of the Federal Bureau of Investigation handled AUSA Welle - who was seated at counsel table - a note advising that two explosions had occurred at the finish line of the Boston Marathon and that initial reports indicated multiple fatalities. AUSA Welle silently read the note, rose from the counsel table, and placed the note on the podium from which AUSA Kogan was addressing the Court. After silently reading the note himself, AUSA Kogan resumed his argument related to the history and characteristics of the Defendants.[1]

AUSA Kogan's argument proceeded to the violent nature of the Defendants as evidenced by their past record and by their actions during the course of the conspiracy. He concluded with the contention that a variance from the Guidelines should not be granted. At no point did he address the dangers that terrorists pose to the people and facilities in the New York metropolitan area, a subject that AUSA Welle had already covered before the note about the Boston bombings had been received.

After Mr. Kogan's presentation and before imposition of sentence, the Court recessed briefly, considered again whether the Statement of Reasons and a Summary of the Statement of Reasons required any changes in light of the hearing arguments. Both, of course, had been prepared prior to April 15. As the undersigned judge waited in his robe outside the courtroom for the court reporter and deputy clerk to assemble, a law clerk mentioned to him that two

---

[1] The Court relies upon the Government's memorandum for the facts set forth here that are not reflected in the transcript.

explosions had taken place at the Boston Marathon, at which point the judge entered the courtroom and proceeded with the sentencing. When the variance was described, the Court read a Summary of the Statement of Reasons and had his Deputy Clerk deliver to the attorneys the full 43-page Statement of Reasons. The events in Boston had no effect upon either the Summary or the Statement. Both derived from the material that the parties had provided the Court long before April 15, 2013 as incorporated in their arguments at the sentencing hearing.

Even though the indictment charged Defendants with a conspiracy to engage in killings in Somalia, the Presentence Report is full of conversations in which one or the other or both Defendants looked forward to killing in the United States non-Muslims or Muslims who disagreed with them. For example, "64. The next day, Alessa stated to the U.C. that he would love to attack the United States homeland on orders of foreign extremists." Further: "80. Later that same day, in a conversation with the UC, and Almonte, Alessa listed the type of people he desired to kill pursuant to his violent extremist ideology . . . I want to kill the ICPC people (referring to the congregants of the Islam Center of Passaic County, located in Paterson, New Jersey. . .)"

Thus, there was a potential for terroristic attacks in the United States by Defendants. One purpose of sentencing was to deter these attacks as well as foreign killings. There was no reason why AUSA Welle and AUSA Kogan should not have referred to that objective when arguing for a 30 year sentence and opposing a variance. As it happened, the Court was of the opinion that 22 and 20 years, respectively, served that purpose. That was its conclusion before the Boston bombing and before the Government argued at the sentencing hearing for a more severe sentence and against a variance.

Although a district court may resentence a defendant where the trial judge's exercise of judicial discretion was tainted or impeded, the Court's discretion in this case was neither tainted or impeded. United States v. Golden, 854 Fed. 31, 32 (3d Cir. 1988). United States v. Bennett, 2013 WL 56349 (3d Cir. Feb. 15, 2013) (per curiam) (unpublished decision). In the first place, Defendants' factual basis for their motion is inaccurate. Upon receipt of the note from the Special Agent, AUSA Kogan did not, as Defense counsel allege, "abruptly shift" his argument away from the characteristics of the defendants to the need to deter violent attacks by homegrown extremists and the vulnerability of the region to such attacks. The Defense Memorandum (at p. 3) is incorrect when it states that AUSA Kogan:

> began to describe in specific terms the vulnerability of the American urban environment to terrorist attack - the Government cited the streets, bridges, tunnels and public spaces of Americans' cities; it made an appeal in dramatic, inflammatory terms to the necessity of safeguarding the domestic, public environment from the Defendants; and it argued that any sentence to be imposed must deter others from carrying out domestic attacks against citizens in Newark and elsewhere.

This general topic was the subject of AUSA Welle's, not AUSA Kogan's, argument and was covered before the note was received.

Apart from the fact that in their Plea Agreement Defendants waived the right to challenge any sentence if the sentences were for 30 years or less, their motion is barred by 18 U.S.C. § 3582(c)which provides that "[t]he court may not modify a term of imprisonment once it has been imposed [except under specified circumstances]." None of these circumstances has been shown to exist here.

For the foregoing reasons, Defendants' motion will be denied. An Order will be entered implementing this Opinion.

DICKINSON R. DEBEVOISE
U.S. Senior District Judge

**DATED: May 21, 2013**